**Application of AIR MIAMI, Inc.**

Docket No. 770631-ACC.     Order No. 14331.

Florida Public Service Commission.

May 24, 1978.

James T. Hendrick, Key West, for the applicant.

James B. Curasi, Tallahassee, for Air Florida, Inc., protestant.

The following commissioners participated in the disposition of this matter — PAULA F. HAWKINS, Chairman, and Commissioners WILLIAM T. MAYO and ROBERT T. MANN.

BY THE COMMISSION.

By this application, Air Miami, Inc. proposes to provide scheduled air carrier service, utilizing Class 3 aircraft, between Miami International Airport and St. Petersburg / Clearwater International Airport.

The president of Air Miami, Inc. is an individual with previous successful experience in operating commuter airline service in Florida. Air Miami presently engages in charter operations, and shows a recent profitable trend of operations which is attributable partly to the placing in service of a Dehavilland Heron, which the applicant also proposes to utilize in its scheduled air carrier service. The applicant presently has a general office and a ticket counter at Miami International Airport. Thus, Air Miami will need additional facilities only at the St. Petersburg Airport. Certain functions, such as bookkeeping and general management, will be performed by existing personnel.

Several public witnesses testified as to the need for the proposed service. These witnesses included the president of a large sales corporation in Largo, whose many employees could utilize the service; and the proprietor of an insurance agency, who testified that he usually drives to Miami because of the inconvenience associated with use of the Tampa International Airport. In addition, the airport director of St. Petersburg / Clearwater International Airport testified as to the need for additional service. The record reflects that, during the period of time when Air Florida provided service between Miami and St. Petersburg, that carrier experienced substantial passenger traffic (6,000 or more passengers per month, or many more needed by the applicant to reach a break-even operating ratio).

There is presently no scheduled air common carrier service between Miami and St. Petersburg. While this application was protested by Air Florida, Inc. and Florida Airlines, the testimony as to the possibility of diversion of traffic from that market is vague and insufficient to counterbalance the demonstrated need for the service proposed by the applicant.

While Air Miami experienced an operating loss for the year ended August 31, 1977 of $13,337, this figure included non-recurring route acquisition expenses in the amount of $12,500. As stated earlier, the financial statements reflect increasingly profitable operations since the advent of the Dehavilland Heron. Bearing in mind the fact that the applicant possesses facilities in Miami, has FAA certification and trained personnel, and will require only minimal start-up expenses on the one route it proposes to serve, we conclude that it possesses sufficient financial stability to undertake the proposed operations. We further conclude that the proposed service is needed and will be utilized by the traveling public; that the applicant proposes to use desirable and proven reliable aircraft and service; that it possesses the necessary business experience in this field; and that it has demonstrated that it can provide economical service between the city pair for which service is sought.

Accordingly, it is ordered that the application of Air Miami, Inc. for an air carrier certificate to transport persons and property between Miami International Airport and St. Petersburg/Clearwater International Airport be and the same is hereby granted.

It is further ordered that Certificate No. 19-ACC be and the same is hereby issued to Air Miami, Inc. authorizing the transportation of persons and property between Miami International Airport and St. Petersburg/Clearwater International Airport as a Class 3 air common carrier.

It is further ordered that the applicant comply with all rules and regulations of this commission.

It is further ordered that the carrier begin service within 90 days of the effective date of this order, else this grant of authority shall be null and void.